United States District Court
Southern District of Texas
**ENTERED**
July 31, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VAN THI–HANH TRINH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-26-5247 |
| | § | |
| JENNIFER BRADFORD, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Texas citizen proceeding *pro se* and seeking leave to proceed *in forma pauperis*, filed a civil complaint and an emergency complaint[1] against numerous individuals and entities for various alleged violations of her rights. Because the Court is granting plaintiff leave to proceed *in forma pauperis*, her lawsuit remains subject to dismissal under the screening requirements of 28 U.S.C. § 1915(e)(2)(B). Nevertheless, the Court finds it necessary and expedient to address plaintiff's seven pending motions prior to screening.

Pending before the Court are plaintiff's application to proceed *in forma pauperis* (Docket Entry No. 2); a motion requesting special assignment of her case to non-African American judicial personnel to prevent cardiac collapse (Docket Entry No. 3); three motions for emergency injunctive relief docketed between July 2, 2026, and July 10, 2026 (Docket

---

[1]Because the complaints were labeled separately but filed together, the Court construes the two pleadings as a single complaint.

Entries No. 4, 12, 13); a general motion for emergency relief (Docket Entry No. 15); and a motion to excuse the filing of service copies (Docket Entry No. 9).

Having considered the complaint, the motions, the record, matters of public record, and the applicable law, the Court grants plaintiff leave to proceed *in forma pauperis* and denies her remaining motions for the reasons shown below.

## I. BACKGROUND AND CLAIMS

The Court has exerted considerable effort in attempting to understand plaintiff's unnecessarily prolix pleadings. *See* FED. R. CIV. P. 8(a) ("A pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief.") By her own count, plaintiff has filed 500 pages of pleadings in this case following its commencement on July 1, 2026. Although plaintiff has also submitted voluminous exhibits, they are largely unuseful due to poor copying quality and her handwritten alterations and additions. Some exhibits are truncated and incomplete. Because plaintiff has defaced the exhibits with her own extensive writings and markings, the Court has found it nearly impossible to distinguish the original exhibit materials from plaintiff's own additions to the materials.

Nevertheless, the Court understands plaintiff's complaint to arise from a work injury she allegedly sustained in 2019, termination of the employment in 2020, and the subsequent denials of her 2024 state workers compensation claims as untimely and unsupported. She alleges on-going repercussions from such denials, including an inability to obtain certain

medical care or pay housing and utility bills. Although many of plaintiff's claims have been raised, denied, dismissed, or remain pending in earlier litigation,[2] plaintiff here reasserts and expands her multifarious allegations under the aegis of RICO, civil conspiracy, and federal criminal statutes. She presents a multitude of obscure claims such as "deep insurance fraud & synthetic identity manipulation," "a dual-claim architecture to enforce total financial & medical deprivation," a "secret financial engine," an "external consumer deflector," and "deployment of shadow organizations." She also claims that the defendants obstructed her proceedings before federal agencies, stole her workers compensation benefits, and violated her rights under the Americans with Disabilities Act ("ADA").

Plaintiff contends that the defendants are "serial fraudster[s] utilizing fake identities and corporate shadow tactics across multiple platforms" who have compromised her telephone numbers, blocked her from creating emails, accused her of having psychiatric illnesses, destroyed her health, and ruined her social standing and financial stability. She

---

[2]*See, e.g., In re Trinh*, No. 25-20446 (5th Cir. Dec. 15, 2025)(writ of mandamus denied); *In re Trinh*, No. 25-20452 (5th Cir. Dec. 4, 2025) (writ of mandamus denied); *In re Trinh*, No. 25-20505 (5th Cir. Dec. 5, 2025)(writ of mandamus denied); *Trinh v. Citgo Petroleum Corp.*, C.A. No. 4:24-CV-1231 (S.D. Tex. May 3, 2024) (remanded to state court and closed); *Trinh v. JP Morgan Chase Bank, N.A.*, C.A. No. 4:24-CV-1230 (S.D. Tex. Apr. 25, 2024) (remanded to state court and closed); *In re Trinh*, C.A. No. 4:24-CV-1997 (S.D. Tex. July 25, 2024) (remanded to state court and closed); *Trinh v. Pan*, C.A. No. H-24-1236 (S.D. Tex. May 17, 2024) (remanded to state court and closed); *Trinh v. Tran*, C.A. No. 4:24-cv-2113 (S.D. Tex. Apr. 16, 2026) (dismissed); *State of Texas v. Trinh*, C.A. No. 4:26-CV-6000 (S.D. Tex.) (pending); *In re Trinh*, Cause No. 2023-57318 in the 133rd District Court of Harris County, Texas (closed); *Trinh v. Pan*, Cause No. 2023-31409 in the 215th District Court of Harris County, Texas (closed); *Trinh v. Citgo Petroleum Corp.*, Cause No. 2022-76347 in the 164th District Court of Harris County, Texas (pending); *Trinh v. JP Morgan Chase Bank, N.A.*, Cause No. 2022-41843 in the 129th District Court of Harris County, Texas (dismissed).

alleges they use "deep fake technology" to impersonate medical providers, government agents, and other authorities and infiltrate medical facilities, utility companies, and government agencies. She contends that they instigated her fraudulent ejections from various government offices, law firms, and medical facilities, including her 2025 arrest for criminal trespass at the Social Security Administration and her removal from Houston Bar Association offices.

As injuries caused by the defendants, plaintiff contends that she has been denied a wheelchair, compensatory income, and medical treatment, resulting in "end-stage cardiac failure" and impending systemic physical collapse. She complains that her home faces imminent foreclosure and loss of utilities. She places at the feet of these "RICO actors" and "shadow entities" responsibility for her years of medical, financial, and personal difficulties. As judicial relief, she seeks $911,000.00 in damages plus treble RICO damages.

## II.  PENDING MOTIONS

1.      Plaintiff's application to proceed *in forma pauperis* (Docket Entry No. 2) is **GRANTED** as to the district court filing fee.

2.      Plaintiff requests that this lawsuit be assigned to judicial personnel of non-African demographics to accommodate her medical disabilities under the ADA (Docket Entry No. 3).  In support, she claims that she

> has endured approximately half-decade of being used for Non-Consensual Bioengineering Experimentation on Neuroscience, as well as being targeted for Biometric Engineering; whereas approximately 95% of the perpetrators and RICO actors belonging to the Pan-African demographic, including those

4

involved in hijacking/swapping/abusing Plaintiff's eyeballs – to gain access to Plaintiff's view fields, chipping Plaintiff's ears, and committing sexual assaults against Plaintiff.

(Docket Entry No. 3, p. 1; verbatim.)  She also requests that her case

not [be] assigned to a judge who has a closed [*sic*] relationship with or work with prior judges – who often defame Plaintiff as having a mental illness/delusional disorder as an excuse for a massive civil wrong, to trigger emotional distress, leading to arrhythmia and exacerbating heart failure symptoms.

*Id.*, p. 6.  As an example of the latter issue, plaintiff complains that in one of her earlier federal lawsuits, the judge ruled that "Additionally, Trinh's allegations that the defendants are controlling [her] mind and torturing [her] with a device implanted in [her] brain are stereotypical examples of baseless allegations under 28 U.S.C. § 1915(e)(2)." *See Trinh v. Pan*, C.A. No. H-24-1236 (S.D. Tex. May 17, 2024).  She states that she experiences shortness of breath, elevated blood pressure, and cardiac arrhythmia when forced to interact with Pan-African individuals.

Plaintiff further appears to implicate Pan-African individuals who "repeatedly trespassed into [her] home to perform ritual abuses," such as "urinating in [her] sugar jar and along the baseboard carpets," and "swapping [her] soda, tampering with [her] toothbrush, and utilizing a 17-foot U-Haul truck to strike [her]."  (Docket Entry No. 3, p. 10.)  She contends that she was unable to prevail in multiple administrative courts, municipal courts, state and federal courts, and the United States Court of Appeals for the Fifth Circuit because the judges and judicial personnel were of the Pan-African demographic.  She indicates that

working with judicial personnel of the Pan-African demographic in this lawsuit would trigger a cardiac episode and her physical collapse.

Plaintiff presents no medical support for her claim that she has an ADA-eligible medical disability that requires she not litigate her lawsuit with judicial personnel of the Pan-African demographic. Her specious assertions and self-generated "proof" of a causative correlation between Pan-African judicial personnel and her court losses and medical issues warrant no action by this Court. Plaintiff's motion (Docket Entry No. 3) is **DENIED**.

3.      Plaintiff asks that she be excused from filing service copies of her 500 pages of pleadings and twenty-seven exhibits due to lack of funds. (Docket Entry No. 9.) The Court has not authorized service of process on any of the defendants in this lawsuit, and the motion is **DISMISSED AS PREMATURE**.

4.      In her fifty-nine page first emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 4), plaintiff asks that the Court enter an *ex parte* emergency temporary restraining order and mandatory preliminary injunction

> enjoining Defendants from aggravating Plaintiff's identify theft/Synthetic Identity, defrauding Plaintiff's INDEMNITY Worker's Compensation Benefit, freezing the synthetic backend track, suspend all fraudulent accesses to Plaintiff's claims files, medical records, and benefits from these Dependents [*sic*]: Jennifer Bradford, Vicky Bush, law firms, attorneys, and agency insiders and ordering the **(a)** immediately [*sic*] reinstate [*sic*] all weekly cash indemnity benefits retroactive to their inception; **(b)** authorize and deliver her medically prescribed **NuMotion Custom Wheelchair** (TiLiteAreoX with Motor SmartDrive); and **(c)** lift all fraudulent administrative database blockades currently targeting Plaintiff's primary care, diagnostic laboratory testing, specialist cardiac care.

*Id.*, p. 58 (verbatim; original capitalizations and boldface).

A preliminary injunction is an extraordinary remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Id.*; *Texas Trib. v. Caldwell Cnty., Texas*, 121 F.4th 520, 525 (5th Cir. 2024). "If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction." *Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990). Courts have wide discretion with respect to whether to grant preliminary injunctions. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987). The factors that govern an application for a temporary restraining order are the same as those that govern a request for a preliminary injunction. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974).

Plaintiff meets none of the requirements for meriting a temporary restraining order or preliminary injunction. In particular, she fails to establish a likelihood of success on the merits. Plaintiff is not entitled to injunctive "reinstatement" of workers compensation benefits retroactive to 2019 or delivery of a motorized wheelchair; as shown in her pleadings, her workers compensation claims were denied by a state administrative law judge in December 2025 because her claims were untimely and she did not sustain a compensable injury. (Docket Entry No. 13-6, pp. 5–10.) She apparently did not appeal the rulings through

the state courts. Plaintiff cannot obtain state workers compensation benefits in federal court by reframing her claims as RICO, civil conspiracy, or federal criminal claims, nor does she establish that the defendants have a legal obligation to pay her money and cover her medical expenses as temporary or preliminary injunctive relief.

Moreover, plaintiff does not identify with the required specificity any "fraudulent administrative database blockades currently targeting Plaintiff's primary care, diagnostic laboratory testing, [and] specialist cardiac care." Her personal belief that these "blockades" exist because various physicians and medical facilities have refused to treat her is insufficient to warrant relief. To the extent any "blockades" are due to the denial of plaintiff's workers compensation claims, the Court reiterates that plaintiff cannot obtain state workers compensation benefits as injunctive relief in this federal lawsuit.

Plaintiff further fails to establish a likelihood of irreparable harm in the absence of temporary or preliminary relief. Plaintiff's medical exhibits from physicians and medical facilities do not show that she "faces catastrophic, life-threatening physical attrition and total destitution" if she does not use a motorized wheelchair or obtain further medical evaluation. Plaintiff's allegations of irreparable harm are specious and unsupported in the record.

In addition, plaintiff fails to show that she will immediately lose her home if temporary or preliminary injunctive relief is not granted. She provides no evidence that her home is in foreclosure proceedings; in fact, she states that a formal notice of acceleration and/or foreclosure has not been issued by her mortgage holder/servicer. That her utilities

8

might be disconnected at her house at some point does not constitute irreparable harm, as her assertion that she would sustain "immediate systemic and cardiac collapse" is unsupported. Even so, plaintiff hinges her foreclosure and utilities issues on the denial of her workers compensation claims, which the Court has already determined cannot be remedied through injunctive relief in this lawsuit. To the extent plaintiff contends that her utility arrearages were fabricated by the defendant "RICO actors" and "shadow entities," her unsupported assertions provide no basis for the granting of injunctive relief.

As a final consideration, the Court cannot enter an order enjoining the defendants from "aggravating Plaintiff's identify theft/Synthetic Identity, defrauding Plaintiff's INDEMNITY Worker's Compensation Benefit, freezing the synthetic backend track, suspend all fraudulent accesses to Plaintiff's claims files, medical records, and benefits." The requested relief is not sufficiently specific for enforcement by contempt proceedings against any named defendant. Even so, plaintiff's conclusory and specious assertions that the defendant "RICO actors" and "shadow entities" are the cause of her medical, financial, and other problems provide no basis for the granting of injunctive relief.

Plaintiff's first emergency motion for temporary injunctive relief (Docket Entry No. 4) is **DENIED**.

5.    In her second emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 12), plaintiff asks the Court to enjoin JP Morgan Chase Bank, N.A., from accelerating her mortgage note and instituting foreclosure proceedings. She renews her

argument of entitlement to "reinstatement" of workers compensation benefits and a wheelchair. Plaintiff claims that the Court's immediate intervention is necessary "to prevent complete physical and financial destruction."

The Court has already denied plaintiff's request for temporary or preliminary injunctive relief as to workers compensation benefits that were denied at the state administrative level. Moreover, the Court cannot order injunctive relief against JP Morgan Chase Bank, N.A., as it is not a party to this lawsuit. The Court takes no action as to plaintiff's complaints of being "escorted out" of various law firms, government agencies, and business offices in her search for legal representation, as these events cannot be remedied by temporary or preliminary injunctive relief in this lawsuit. Again, plaintiff's conclusory and specious allegations that these acts were instigated by the defendants as "RICO actors" and "shadow entities" provide no basis for the granting of injunctive relief.

Plaintiff's second emergency motion for temporary injunctive relief (Docket Entry No. 4) is **DENIED**.

6.    In her 397-page third emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 13), plaintiff again seeks immediate injunctive relief as to workers compensation benefits, a wheelchair, the "unblocking" of medical care, and preclusion of foreclosure actions. The Court has already considered and denied temporary or preliminary injunctive relief as to these claims, *supra*.

Plaintiff further asks that "Third-Party Administrator ESIS" be suspended from access to her claim files; that MediCall be enjoined from conducting medical necessity audits, peer reviews, or utilization reviews regarding her workers compensation and/or carrier claims; that ACE American Insurance Company and MediCall immediately vacate all adverse determinations and behavioral pretexts as to plaintiff's treating providers; that defendants issue full, unconditional financial authorizations for plaintiff's medical care and physical therapy and cease all interference with reports required for her Social Security Administration disability application; that the defendants immediately fund, approve, and clear all outstanding doctor's orders; that the defendants cease all alterations of plaintiff's electronic medical records; that plaintiff's failure to exhaust state administrative remedies be waived; and that the defendants be estopped from raising any limitations, notice, laches, or filing deadline defenses to plaintiff's workers compensation claims.

Plaintiff does not show entitlement to these temporary or preliminary injunctions. In particular, and for reasons discussed earlier, she fails to establish a likelihood of success on the merits or a likelihood of irreparable harm in the absence of preliminary relief. In particular, her conclusory allegations of irreparable harm of "advance-stage heart failure to irreversible biological collapse" are unsupported by medical records or statements by her physicians, and her own opinions as to her medical conditions and her interpretations of her records are insufficient to carry her burden of persuasion and proof. Plaintiff's conclusory and specious assertions that the defendants are "RICO actors" and "shadow entities"

unlawfully interfering with her workers compensation benefits and other actions again provide no basis for the granting of injunctive relief.

Plaintiff's third emergency motion for temporary injunctive relief (Docket Entry No. 13) is **DENIED**.

7.      In her fourth emergency motion (Docket Entry No. 15), plaintiff moves "to correct 'frauds on court'/docket errors, direct service of process, request for immediate judicial reviewing of an ex-parte motion & request unseal."   Plaintiff's request that the Court immediately review her pending motions for injunctive relief is denied as moot.  The Court has considered and denied plaintiff's three motions for temporary or preliminary injunctive relief, *supra*.

Service of process on the defendants is denied at this time.  Because plaintiff has been granted leave to proceed *in forma pauperis*, this lawsuit remains under judicial screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Court is also required to determine whether it has subject matter jurisdiction and is a court of proper venue predicated on plaintiff's allegations of jurisdiction and venue in her complaint.  Should the Court allow this lawsuit to go forward in whole or in part, the Court will order service of process on one or more of the named defendants as it deems appropriate and at the service addresses provided by plaintiff in her complaint.  Plaintiff is **ORDERED** not to undertake any actions to effectuate service of process in this lawsuit unless expressly ordered in writing by the Court.

To the extent plaintiff contends that the Court fraudulently terminated one of her motions and ignored her jury demand, the Court has reviewed the docket and finds that the "fraudulently terminated" motion (Docket Entry No. 4) has been denied on the merits, *supra*. The Court further notes that the docket sheet reflects that plaintiff made a jury demand. Plaintiff's conclusory claim of fraudulent actions by a "court insider" warrants no action.

Plaintiff's claim that the Clerk of Court failed to follow her explicit instructions for the docketing of her exhibits warrants no judicial relief. The Clerk of Court followed the Court's usual practice by docketing under one docket entry plaintiff's motion and the exhibits submitted with the motion. (Docket Entry No. 13.) Plaintiff is not entitled to demand that each of her exhibits be docketed under its own separate docket entry, and the Court declines to order a restructuring of the docket in this case.

Plaintiff's emergency motion (Docket Entry No. 15) is **DENIED.**

### III. CONCLUSION

For the reasons shown above, the Court **ORDERS** as follows:

1.     Plaintiff's application to proceed *in forma pauperis* (Docket Entry No. 2) is **GRANTED** as to the district court filing fee.

2.     Plaintiff's motion that her case be assigned to non-African American judicial personnel (Docket Entry No. 3) is **DENIED.**

3.     Plaintiff's motion that she be excused from filing service copies of her pleadings and exhibits (Docket Entry No. 9) is **DISMISSED AS PREMATURE.**

4.      Plaintiff's first emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 4) is **DENIED**.

5.      Plaintiff's second emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 12) is **DENIED**.

6.      Plaintiff's third emergency motion for temporary or preliminary injunctive relief (Docket Entry No. 13) is **DENIED**.

7.      Plaintiff's fourth emergency motion (Docket Entry No. 15) is **DENIED**.

8.      Plaintiff was granted leave to proceed *in forma pauperis*, and the Court must screen plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).   Under that provision, the Court must dismiss this lawsuit or any claim brought therein if the Court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  Because this lawsuit remains under active screening, plaintiff is **ORDERED** not to file any further pleadings seeking judicial relief from this Court until the screening process has been completed.  Any pleading filed in violation of this order will be terminated on the docket or stricken from the record without further notice. The Court will notify plaintiff at the appropriate time that the screening process has been completed.

9.      Plaintiff is **ORDERED** not to undertake any actions to effectuate service of process in this lawsuit unless expressly ordered in writing by the Court.

10.     Plaintiff must advise the Court in writing of any change to her address of record. Plaintiff's failure to advise the Court of any change to her address of record may result in dismissal of this lawsuit.

11.     The Court prospectively certifies that any appeal of this *Memorandum Opinion and Order* in whole or in part by plaintiff would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24(a)(3). In support of this certification, the Court relies on the analysis and rulings set forth hereinabove. *See Baugh v. Taylor*, 117 F.3d 197, 202 & n.21 (5th Cir. 1997). The Court concludes that any appeal of this *Memorandum Opinion and Order* by plaintiff would present no legal point of arguable merit and would, therefore, be frivolous. *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). In the event of an appeal, plaintiff may challenge this certification by filing a separate motion to proceed *in forma pauperis* on appeal with the clerk of the United States Court of Appeals for the Fifth Circuit. *See Baugh*, 117 F.3d at 202; FED. R. APP. P. 24(a)(5).

Signed at Houston, Texas, on this the 28th day of July, 2026.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE